J-A29005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JENNIFER BENNETT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL T. BRAUND AND MICHAEL | : | No. 105 WDA 2025 |
| T. BRAUND CONSTRUCTION, INC. | : | |

Appeal from the Order Entered December 20, 2024
In the Court of Common Pleas of Butler County Civil Division at No(s):
AD-2024-10292

BEFORE:  OLSON, J., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY DUBOW, J.:　　　　　　　**FILED: JANUARY 27, 2026**

Appellant, Jennifer Bennett ("Owner"), appeals from the December 20, 2024 order sustaining the preliminary objections filed by Appellees, Michael T. Braund and Michael T. Braund Construction, Inc. ("Builder"), and dismissing Owner's complaint with prejudice after finding that the parties had entered into a valid agreement to arbitrate and Owner's claims are within the scope of the agreement.[1]  Owner challenges the court's finding that her claims are within the scope of the arbitration agreement.  After careful review, we affirm the portion of the order that sustained the preliminary objections and reverse

---

[1] In general, an order sustaining preliminary objections and compelling a case to arbitration is interlocutory. ***Schantz v. Dodgeland***, 830 A.2d 1265, 1266 (Pa. Super. 2003).  However, where, as here, the trial court sustains preliminary objections based on a valid and applicable agreement to arbitrate and dismisses the case, rather than issuing a stay, the plaintiff may take an immediate appeal. ***Stern v. Prudential Financial, Inc.***, 836 A.2d 953, 955 n.1 (Pa. Super. 2003).

the portion of the order that dismissed with prejudice, rather than stayed, the action pending arbitration.

The relevant facts and procedural history are as follows. On May 10, 2021, the parties executed an "Agreement for Construction of Dwelling House on Owner's Lot" ("Builder Agreement"), which pertained to construction of Owner's home in Mars, Pennsylvania. The Builder Agreement included, *inter alia*, provisions regarding default/termination and dispute resolution. Section 14 of the Builder Agreement concerned the parties' rights and remedies if either party is in default and explained which disputes are subject to arbitration and which are not.

In particular, Section 14(a), titled "Payment of Contract Price Dispute," permitted Builder to enforce Owner's payment obligations under the Builder Agreement. Section 14(a) explicitly provided that those claims are not subject to arbitration and that Builder must, instead, bring actions to enforce Owner's payment obligations at law. Builder Agreement, 5/10/21, at § 14(a).

Section 14(b), a termination provision, explained that Builder had the right to terminate the Builder Agreement if Owner defaults by failing to pay any portion of the contract price, fails to maintain insurance as required by the Builder Agreement, or "persistently fails to cooperate with" Builder. **Id.** at § 14(b).

Section 14(d)(1), a termination provision titled "Owners Right to Terminate," permitted Owner to terminate the Builder Agreement if "Builder fails to satisfy its obligations under this Agreement to construct the

Improvements." *Id.* at § 14(d)(1). In other words, the Builder Agreement provides Owner the remedy of termination if Builder failed to satisfy its obligations under the Builder Agreement. Of most importance to our analysis, this provision is silent about whether the parties must resolve disputes arising from this paragraph by arbitration or before a trial court. It merely provides a remedy to Owner if Builder fails to properly construct the improvements.

Section 14(e), however, addressed which disputes must be resolved by arbitration. In particular, this provision is titled "Other Disputes," provided a list of claims that must be submitted to arbitration including claims arising out of the construction of the improvements. It specified as follows:

> [s]ubject to the provisions of subsection (a) [excluding from arbitration any claims by Builder to enforce Owner's obligations to pay sums due under the Agreement], **any controversy or claim arising out of or relating to this Agreement, the construction of the Improvements, or any matter related to breach of contract, fraud, misrepresentations, warranty and/or negligence shall be settled** by negotiation between the parties, or if any party concludes that further negotiation will be fruitless, **by binding arbitration in accordance with the procedures set forth in section 15 relating to arbitration**.

*Id.* at § 14(e) (emphasis added). Section 14(e) also indicated that "[t]he provisions of this section shall survive the Construction Closing."[2] *Id.*

Another arbitration provision, Section 15(a), reaffirmed, *inter alia*, that a party may elect to commence arbitration only after "concluding that further

---

[2] The Builder Agreement defined the "Construction Closing" as "the date on which the final installment of the purchase price is required to be paid, by cashier's check or wired finds." *Id.* at § 3(d).

negotiations will be unlikely to lead to a resolution of the dispute[.]" ***Id.*** at 15(a).

Owner obtained a home construction loan from Erie Bank and informed Erie Bank that she had selected Builder as her contractor. Erie Bank approved Owner's selection of Builder as her contractor.

The parties agreed to a "draw schedule" in which Owner would pay Builder upon completion of various stages of the project. The payment procedure provided that: (1) once Builder completed each successive building stage, Builder would advise Erie Bank of completion and request the corresponding draw or disbursement; (2) Erie Bank would direct an inspector to confirm that Builder had completed the work necessary to trigger disbursement; (3) the inspector would inform Erie Bank of completion; (4) Erie Bank would prepare the disbursal request and forward it to Owner for her signature; and (5) Erie Bank would disburse the requested draw to Builder.

On October 11, 2021, Builder began the project after receiving Draw #1 from Erie Bank. On March 11, 2022, Builder informed Erie Bank that it was ready for Draw #2. Upon receiving this request, Erie Bank notified the real estate inspector via email that the project was ready for inspection to determine if Erie Bank should issue Draw #2. By letter dated March 15, 2022, the inspector advised Erie Bank that "the subject was viewed and found to be complete for the requirements of Draw #2 (10% foundation)." Letter, 3/15/22.

On March 23, 2022, Owner received from Erie Bank and electronically signed a "Construction Advance Authorization" authorizing a payment of $247,000 to Builder. That same day, after Owner approved the payment, Erie Bank disbursed funds in that amount via check to Builder.

On March 17, 2023, pursuant to Paragraph 14(d)(1) of the Builder Agreement, Owner terminated the Builder Agreement prior to completion of the construction on her home due to Builder's alleged material breaches of the Builder Agreement.

On April 1, 2024, Owner filed a seven-count complaint raising claims of Breach of Contract, Negligent Misrepresentation, Unjust Enrichment, violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"),[3] and Fraudulent and/or Intentional Misrepresentation, and requesting that the trial court pierce the corporate veil. Owner claimed that Builder knowingly retained funds paid to it by Owner without completing the construction of Owner's home amid significant construction delays and issues.

In particular, Owner claimed that Erie Bank overpaid Builder by $123,500 when it issued the $247,000 Draw #2 payment because the Draw Schedule provided for a Draw #2 payment of only $123,500. She contended that Builder failed to notify Owner of the overpayment and remains in possession of the extra $123,500 to which it was not entitled. Owner also claimed that after Builder received the erroneous disbursement, she began to

---

[3] 73 P.S. §§ 201-1-201-10.2.

experience problems with Builder including Builder slowing progress in completing the project, cutting corners, and not building according to the agreed specifications.

On May 22, 2024, Builder filed preliminary objections pursuant to Pa.R.Civ.P. 1028(a)(6) and a motion for preliminary injunction asserting the existence of an agreement for alternative dispute resolution, in particular Section 14(e) of the Builder Agreement. The trial court scheduled a hearing on the preliminary objections and motion, and the parties briefed their respective positions.

Owner argued in opposition to the preliminary objections that the arbitration provisions in the Builder Agreement did not apply to her claims because she terminated the Builder Agreement. In particular, she claimed, *inter alia*, that the arbitration language provided in Section 14(e) of the Builder Agreement does not apply: (1) when an owner terminates the Builder Agreement pursuant to Section 14(d)(1) due to the builder's "fail[ure] to satisfy [their] obligations under this Agreement to construct the Improvements[,]" as Owner did; and (2) because Section 14(e) "presupposes an Agreement which had not been terminated by either party under [Section] 14(d)" because Section 14(e) was "expressly intended to survive the Construction Closing," which the Builder Agreement did not. Brief in Opp. to Preliminary Objections, 8/7/24, at 3-4.

She also asserted that adopting Builder's interpretation of the Builder Agreement would nullify both the title of Section 14(e) itself—"Other Claims"—

- 6 -

which she contended "clearly implies that not all of Owner's claims against Builder must be submitted to arbitration"—as well as the introductory language of Section 15—"if a party elects to commence arbitration"—which she argues implies that there are some claims that Owner is not required, but may elect, to submit to arbitration.. *Id.* at 4-5.

Owner also averred in the alternative that if the court found that the Builder Agreement was ambiguous it should resolve the ambiguity in her favor as she was purportedly the non-drafting party. Also in the alternative, Owner last argued that enforcing the arbitration provision is unconscionable because she suffers from multiple sclerosis and "lacked meaningful choice in signing the agreement." *Id.* at 6.

Following the hearing, the trial court sustained the preliminary objections and dismissed Owner's complaint with prejudice after finding that the Builder Agreement contained an unambiguous and valid arbitration provision and that Owner's claims fell within the scope of the provision.

This timely appeal followed. Both Owner and the trial court complied with Pa.R.A.P. 1925.

Owner raises the following issues on appeal:

1. Whether the trial court erred in dismissing this action with prejudice and directing that the matter proceed to arbitration where the arbitration clause does not apply if the contract has been terminated by the owner prior to completion?

2. Whether the trial court erred in dismissing this action with prejudice and directing that the matter proceed to arbitration where the arbitration clause was ambiguous and should have been construed in favor of [O]wner?

3. Whether the trial court erred in dismissing this action with prejudice and directing that the matter proceed to arbitration where the arbitration clause was unconscionable?

4. Whether the trial court erred in dismissing [Owner's] [c]omplaint with prejudice on the basis of an arbitration clause and failing to stay the action, thereby placing [Owner] out of court?

Owner's Brief at 8 (renumbered).[4]

Owner challenges the trial court's order sustaining Builder's preliminary objections and compelling this case to arbitration. We review such an order to determine whether the trial court abused its discretion. *Knight v. Springfield Hyundai*, 81 A.3d 940, 947 (Pa. Super. 2013). "First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement." *Fineman, Krekstein & Harris, P.C. v. Perr*, 278 A.3d 385, 389 (Pa. Super. 2022) (citation omitted). "Whether a written contract includes an arbitration agreement and whether the parties' dispute is within the scope of the arbitration agreement are questions of law subject to this Court's plenary review." *In re Estate of Atkinson*, 231 A.3d 891, 898 (Pa. Super. 2020).

Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary. The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally. These are questions of law and our review is plenary. Arbitration is a matter of contract, and parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to

---

[4] Owner also raised a claim in response to this Court's order to show cause why the order sustaining Builder's preliminary objections is immediately appealable. As stated *supra*, the order on appeal is a final appealable order.

arbitrate that issue. Even though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, arbitration agreements are to be strictly construed and such agreement should not be extended by implication.

*Elwyn v. DeLuca*, 48 A.3d 457, 461 (Pa. Super. 2012) (internal citations and quotation marks omitted).

Our Supreme Court has explained that "[t]he fundamental rule in contract interpretation is to ascertain the intent of the contracting parties." *Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468 (Pa. 2006). "When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself." *Id.* "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* at 468-69. "While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact." *Id.* at 469.

\*\*\*

In her first issue, Owner contends that the trial court erred in finding that the arbitration clause in the Builder Agreement applied to Owner's claims. Owner's Brief at 20-23. She reasserts the arguments she presented to the trial court that: (1) because the list of "Other Disputes" set forth Section 14(e) of the Builder Agreement does not include termination of the Builder Agreement arising from Builder's failure to satisfy its obligations under the Builder Agreement, the Builder Agreement does not require her to her submit

her claims to arbitration; (2) submission of claims to arbitration presupposes the continued existence of the Builder Agreement because Section 14(e) includes language referencing the "Construction Closing"; and (3) adopting Builder's position "nullifies the title of [Section] 14(e) as well as the introductory language of [Section] 15." *Id.* at 22-23.

Following our review of Builder Agreement and Owner's claims, we find no error in the trial court's determination that the Builder Agreement contained a valid and enforceable arbitration provision that applies to Owner's claims. The essence of Owner's claims against Builder is that Builder failed to properly construct the improvements at her home. In other words, Owner alleged that Builder breached the Builder Agreement by not completing construction or completing construction in a faulty manner. This claim falls squarely within the scope of Section 14(e) that requires the parties to arbitrate this type of claim—a claim based on the faulty construction of the improvements. Section 14(e) provides:

> **any controversy or claim arising out of or relating to this Agreement**, **the construction of the Improvements**, or any matter related to breach of contract, fraud, misrepresentations, warranty and/or negligence **shall be settled by** negotiation between the parties, or if any party concludes that further negotiation will be fruitless, by **binding arbitration**[.] . . . The provisions of this section shall survive the Construction Closing.

Builder Agreement at § 14(e) (emphasis added).

Owner argues that this provision does not apply because she exercised her right to terminate the Builder Agreement. We disagree. Here, Owner

exercised her right to terminate the Builder Agreement because she claims that the Builder constructed the improvements in a faulty manner. We do not dispute that Section 14(b) provides her with the right to terminate the Builder's Agreement when she has a claim based on faulty construction. This provision is a remedy for such a claim, but it does not address which forum will address the claim. Rather, it is Section 14(e), set forth *supra*, that addresses the appropriate forum for the claim.

Owner further argues that her claims do not fall with the scope of the Section 14(e) arbitration provision because she terminated the agreement prior to the "Construction Closing," which, as noted above the Builder Agreement defines as "the date on which the final installment of the purchase price is required to be paid, by cashier's check or wired finds." Builder Agreement at § 3(d). We again disagree with Owner's position. The clear and unambiguous language of Section 14(e), merely indicates the parties' intention that the arbitration provision would continue to apply to claims of the types specified **even after** Owner had paid the final installment price to owner. Section 14(e)'s reference to "Construction Closing" does not, as Owner argues, indicate that the types of claims specified were arbitrable **only if** Owner paid the final installment of the purchase price as required by the Builder Agreement.

Last, we find that Owner's claim that enforcing the arbitration provision "nullifies the title of [Section] 14(e) as well as the introductory language of [Section] 15," Owner's Brief at 22-23, lacks merit. Following our review, we

conclude that the trial court's determination that Owner must arbitrate her claims is consistent with the title of Section 14(e) because the "Other Disputes" to which the tile refers are disputes involving an owner's failure to pay a builder and for which the Builder Agreement specifically provides an alternate forum for obtaining relief. The court's decision is likewise consistent with the introductory language of Section 15(a),[5] which does not address the scope of the arbitration provision and, accordingly, does not remove Owner's claim from its scope.

In sum, because the parties do not dispute that a valid agreement to arbitrate exists and we have found that the instant claims are within the scope of the agreement to arbitrate and the provision applies to Owner's claims notwithstanding that she did not pay Builder the final installment of the purchase price, we conclude that substantial evidence supports the trial court's decision to order this case to arbitration.[6]

---

[5] Section 15(a) includes the following introductory language: "If a party elects to commence arbitration after concluding that further negotiations will be unlikely to lead to a resolution of the dispute . . . ."

[6] In her second issue, Owner claims that the arbitration provision was ambiguous and, therefore, that the court should have interpreted it in her favor. Appellant's Brief at 23. Having already found that the arbitration provision in the Builder Agreement is not ambiguous, we conclude this issue lacks merit and need not address it in detail.

***

In her next issue, Owner contends that trial court erred in finding that arbitration provision enforceable because it is unconscionable. Owner's Brief at 23-25.

A contract term is unconscionable "where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it." ***Salley v. Option One Mortg. Corp.***, 925 A.2d 115, 119 (Pa. 2007). When a contract or one of its terms is unconscionable it is avoidable. ***Id.***

Owner argues that the Builder Agreement's arbitration provision is unconscionable because Builder presented the Builder Agreement to her for her signature after she "had already secured financing . . . and spent considerable time speaking with" Builder. Owner's Brief at 24. She further argues that the arbitration provision unreasonably favored Builder because it was "not in all caps and did not advise [Appellant] that she would be waiving jury trial rights over various types of claims." ***Id.*** She, therefore, concludes that she lacked meaningful choice over whether to agree to submit her claims to arbitration.

"The Rules of Appellate Procedure [] state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." ***Commonwealth v. Martz***, 232 A.3d 801, 811 (Pa. Super. 2020) (citation omitted); ***see also*** Pa.R.A.P. 2111 (listing briefing requirements for appellate briefs) and Pa.R.A.P. 2119 (listing argument

requirements for appellate briefs). "When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review[,] a Court will not consider the merits thereof." **Branch Banking and Trust v. Gesiorski**, 904 A.2d 939, 942-43 (Pa. Super. 2006) (citation omitted). It is axiomatic that the argument portion of an appellate brief must be developed with citation to the record and relevant authority. Pa.R.A.P 2119(a)-(c). As this Court has made clear, we "will not act as counsel[.]" **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007).

Although Owner has cited to boilerplate law explaining the principles of unconscionability, she has failed to support her claim that the instant arbitration provision is unconscionable with citation to any controlling authority to support her argument and, accordingly, has failed to apply the law to the facts of this case in a manner that would facilitate appellate review as required by our Rules of Appellate Procedure and case law. We, thus, find this claim waived.

\*\*\*

In her final issue, Owner asserts that the trial court erred in dismissing her complaint with prejudice rather than staying the case pending the outcome of arbitration. Owner's Brief at 25-26. We agree.

In **Stern**, **supra**, this Court explained that "when referring a matter to arbitration, the trial judge is not to dismiss the case but is to stay the civil action until the arbitration is completed." **Stern**, 836 A.2d 955 n.1. This Court determined that where the trial court erroneously dismisses the case

- 14 -

rather than staying it "a remand is necessary to instruct the trial judge that even if ordering arbitration, the proper method is not to dismiss the civil action but to stay it[.]" *Id.*

Although we find that the trial court properly sustained Builder's preliminary objections and ordered Owner to submit her claims to arbitration, guided by the holding in **Stern**, we reverse the trial court's order insofar as it dismissed Owner's complaint and remand for the court to reinstate Owner's complaint and stay this matter pending completion of arbitration.

Order affirmed in part and reversed in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/27/2026